CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

FEB 1 2 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| LEROY M. THURSTON, JR., *Plaintiff,* | CIVIL NO. 3:07CV00036 |
| v. | |
| DAVID MELTON, *Superintendent of Louisa County Schools,* | MEMORANDUM OPINION |
| LOUISA COUNTY SCHOOLS, *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the Court on Defendants' Motion to Dismiss (docket entry no. 9) and Motion for Sanctions (docket entry no. 28).[1] Defendants argue that Plaintiff failed to state a claim upon which relief can be granted and that his claims and legal contentions are frivolous, made in bad faith, and not warranted by law. They ask for dismissal of Plaintiff's case pursuant to Rule 12(b)(6) and for sanctions against Plaintiff, including attorney's fees and a pre-filing injunction, pursuant to Rule 11. For the reasons set forth below, I will enter Orders GRANTING Defendants' Motion to Dismiss, GRANTING Defendants' Motion for Sanctions, ORDERING Plaintiff to pay Defendants reasonable attorney's fees in the amount of $500.00, and GRANTING a pre-filing injunction against Plaintiff.

## I. BACKGROUND

Proceeding *pro se*, Plaintiff filed suit in June 2007 against his former employer, Louisa County Public Schools (LCPS), as well as Superintendent David Melton and the Sheriff of Louisa County, Ashland D. Fortune. Plaintiff, who is African American, complains that LCPS

---

[1] Also pending is Defendants' Motion to Dismiss (docket entry no. 9). As I stated at the November 21, 2007 hearing, I will dismiss Plaintiff's case. An appropriate order will issue following the resolution of Defendants' Motion for Sanctions.

discriminated against him on the basis of his race in (1) failing to pay him overtime during his employment in the 1990s, (2) wrongly terminating his employment in 2000, and (3) forbidding him, on threat of trespassing charges, from returning to the premises of any LCPS school.  On August 8, 2007, I dismissed Sheriff Fortune and two counts of Plaintiff's Complaint.  Defendants filed a Rule 12(b)(6) Motion to Dismiss and, later, a Motion for Sanctions.

Significantly, this is not the first time Plaintiff has filed suit in this Court on essentially these same grounds.  Indeed, a review of Court records reveals that Plaintiff has filed or attempted to file twenty-five other lawsuits in this Court since 1997, nearly all of which have been based on claims of racial discrimination.  Of those twenty-five cases, twelve were against LCPS, the Louisa County School Board, or their employees and raised essentially the same claims as those in Plaintiff's current lawsuit.  Of those twelve, all were decided pre-trial in favor of the defendants.[2]  In four of the twelve cases, Plaintiff appealed to the U.S. Court of Appeals for the Fourth Circuit, and in all four, the Fourth Circuit either affirmed the Court's decision or dismissed the appeal.[3]

## II. MOTION TO DISMISS

As I stated at the hearing on Defendants' motions, I will dismiss this case.  Despite two extensions of the time for doing so, Plaintiff failed to respond to the Motion to Dismiss.

---

[2] Following are the twelve cases and their outcomes: *Thurston v. Louisa County Sch. Bd.*, Civil No. 3:97cv00109 (summary judgment granted in favor of the defendant); *Thurston v. Louisa County Pub. Sch.*, Civil No. 3:01cv00084 (dismissed for failure to state a claim); *Thurston v. United Parcel Serv. et al.*, 3:01cv00085 (same); *Thurston v. Jackson*, Civil No. 3:02cv00015 (dismissed for lack of jurisdiction); *Thurston v. Melton*, Civil No. 3:03mc00002 (motion to proceed in forma pauperis denied for, among other things, failure to sufficiently set forth the basis of the claim); *Thurston v. Riddell*, Civil No. 3:03mc00003 (same); *Thurston v. Pierce*, Civil No. 3:03mc00004 (same); *Thurston v. Albemarle Sch. et al.*, Civil No. 3:03mc00006 (same); *Thurston v. Riddell et al.*, Civil No. 3:04cv00058 (dismissed as frivolous and for failure to state a claim); *Thurston v. Jackson*, Civil No. 3:04cv00059 (dismissed as frivolous and for failure to state a claim); *Thurston v. United Parcel Serv. et al.*, Civil No. 3:04cv00060 (dismissed as frivolous and for failure to state a claim); and *Thurston v. Riddell et al.*, Civil No. 3:04cv00061 (dismissed as frivolous and for failure to state a claim).

[3] The four cases in which Plaintiff appealed are *Thurston v. Louisa County Sch. Bd.*, Civil No. 3:97cv00109; *Thurston v. Louisa County Pub. Sch.*, Civil No. 3:01cv00084; *Thurston v. United Parcel Serv. et al.*, Civil No. 3:01cv00085; and *Thurston v. Jackson*, Civil No. 3:02cv00015.

Therefore, pursuant to paragraph 5 of the Pretrial Order entered on September 19, 2007, I consider the motion to be unopposed. Furthermore, at the hearing, Plaintiff explicitly did not dispute the propriety of dismissal. Accordingly, I need not address the Rule 12(b)(6) issue and will grant Defendants' Motion to Dismiss in an Order to follow.

## III. MOTION FOR SANCTIONS

A court may impose sanctions upon an attorney, law firm, or party that files a "pleading, written motion, or other paper" that is:

> (1) . . . presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) . . . [not] warranted by existing law or by a nonfrivolous argument for the extending, modifying, or reversing existing law or for establishing of new law; [or]
>
> (3) [lacking in] . . . evidentiary support or, if specifically so identified, [is un]likely [to] have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(1–3), (c); *see also Moore v. SouthTrust Corp.*, 392 F. Supp. 2d 724, 736 (E.D. Va. 2005). A Rule 11 sanction "may include nonmonetary directives; an order to pay a penalty into court; or . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

Rule 11 applies to both represented and unrepresented parties. *Harmon v. O'Keefe*, 149 F.R.D. 114, 116 (E.D. Va. 1993). Moreover, even independent of Rule 11, a district court also retains the ability under its inherent powers to award fees and costs in frivolous cases where bad faith is shown. *See, e.g., Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535, 543 (4th Cir. 2002); *Guidry v. Clare*, 442 F. Supp. 2d 282, 296 n.13 (E.D. Va. 2006).

- 3 -

Defendants have certified, and Plaintiff does not dispute, that in pursuing sanctions against Plaintiff, Defendants have complied with the "safe harbor" provision found in Rule 11(c)(2). Accordingly, the first issue that must be addressed is whether Plaintiff has violated Rule 11. "The basic requirement of Rule 11 is that an unrepresented party or a represented party's attorney conduct a prefiling investigation of law and fact which is objectively reasonable under the circumstances. . . . As to the prefiling legal investigation, Rule 11 is violated where the complaint has absolutely no chance of success under the existing precedent." *Harmon*, 149 F.R.D. at 116 (citations and internal quotation marks omitted); *see also In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998).

As Defendants correctly argue:

> In this case, the plaintiff must realize that all of his claims are either time-barred or barred by the doctrine of res judicata. Although the plaintiff might not know these legal terms, he certainly knows that he has filed numerous actions in this Court without success, and that at least one of his earlier suits based on these same facts was dismissed as frivolous.[4] In short, had he done even a cursory examination of the relevant legal principles, he would have known that this lawsuit was frivolous and had no chance of success.

(Defs.' Mot. 3.) Indeed, in conducting a prefiling legal investigation, Plaintiff needed look no further than the orders disposing of the other twelve nearly identical lawsuits he has filed or attempted to file. All were decided in favor of the defendants, and six were dismissed for failing to state a claim upon which relief can be granted. Furthermore, the one such dismissal that was properly appealed to the Fourth Circuit was affirmed, as was the Court's summary judgment in favor of the defendant in the first of these twelve cases. *See Thurston v. Louisa County Pub. Sch.*, 21 Fed. Appx. 234, 234 (4th Cir. 2001); *Thurston v. Louisa County Sch. Bd.*, 1999 WL 964492, at *1 (4th Cir. Oct. 22, 1999).

---

[4] In fact, four of Plaintiff's earlier suits were dismissed as frivolous. *See supra* note 2.

- 4 -

In short, Plaintiff has been told numerous times and in no uncertain terms that his "claims . . . and legal contentions are [not] warranted by . . . law." Fed. R. Civ. P. 11(b)(2). Nevertheless, with full knowledge of these clear and abundant signs that the law does not permit the Court to grant relief on his claims, Plaintiff sued Defendants anyway.[5] Given these circumstances, one can only conclude that Plaintiff's Complaint in the instant case was "presented for an[] improper purpose, such as to harass . . . or needlessly increase the cost of litigation." Accordingly, I find that, even taking into consideration Plaintiff's *pro se* status, the remaining claims presented in his Complaint were submitted in violation of the Rule 11(b)(1) and 11(b)(2) requirements.

### A. Monetary Sanction

Having found that Plaintiff violated Rule 11, I must now determine the appropriate sanction or sanctions. Defendants first request that Plaintiff be ordered to pay their reasonable attorney's fees. As the Fourth Circuit has stated:

> [I[t is clear that the primary, or "first" purpose of Rule 11 is to deter future litigation abuse. A district court can and should bear in mind that other purposes of the rule include compensating the victims of the Rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management. But the amount of a monetary sanction should always reflect the primary purpose of deterrence.
> When a monetary award is issued, a district court should . . . . consider the four factors recently enumerated by the Tenth Circuit in *White v. General Motors Corp.*, 908 F.2d 675: (1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation.

*In re Kunstler*, 914 F.2d 505, 522–23 (4th Cir. 1990); *see also* Fed. R. Civ. P. 11(c)(4) ("The sanction may include . . . , if imposed on motion and warranted for effective deterrence, an order

---

[5] "Needless to say, the constant repetition of the same 'claims' previously adjudged infirm, does not miraculously breathe new life into them." *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 500 (E.D.N.Y. 1998).

- 5 -

directing payment to the movant of part or all of the reasonable attorney's fees . . . directly resulting from the violation.").

I find that requiring Plaintiff to pay Defendants' reasonable attorney's fees is warranted to compensate the victims of Plaintiff's Rule 11 violation and to punish Plaintiff's abuse.[6] Plaintiff's violation is not the result of mere carelessness or neglect, but rather are willful abuses of the judicial system. Furthermore, Plaintiff's violation does not affect only one or two minor issues. Instead, it infects the entire case—had Plaintiff complied with Rule 11, there would be no case at all because Plaintiff would not have filed his Complaint. Although the severity of the violation thus favors a sizable payment of reasonable attorney's fees, I also find that Plaintiff's ability to pay such fees is substantially limited given the financial circumstances set forth in his application to proceed in forma pauperis. Therefore, I find that requiring Plaintiff to pay a maximum of $500.00 in reasonably attorney's fees is appropriate and, when combined with a pre-filing injunction, should be sufficient to deter repetition of Plaintiff's conduct and comparable conduct by similarly situated persons.

Defendants have not submitted to the Court an accounting of their attorney's fees "directly resulting from the [Rule 11] violation." Fed. R. Civ. P. 11(c)(4). Because Plaintiff's violation of Rule 11 occurred in the very filing of his Complaint, however, the reasonable fees directly resulting from his violation include all reasonable fees that Defendants have incurred in this case. Furthermore, I take judicial notice, pursuant to Federal Rule of Evidence 201, that the average rate in the Charlottesville Division for the type of services rendered by Defendants' attorney is well over $100 per hour, and that counsel has reasonably expended at least five hours on this case, given that he has filed an Answer, two motions, several briefs, and has twice

---

[6] Certainly, one would hope that this would also have some deterrent effect. As I will explain, however, I find that the issue of deterrence is better addressed by a pre-filing injunction.

appeared in court. Fed. R. Evid. 201; *cf. In re Olson*, 884 F.2d 1415, 1424 (D.C. Cir. 1989)

(taking judicial notice that a certain attorney's billing rate was a reasonable rate for his legal

services); *Waters v. Kemp*, 845 F.2d 260, 265 (11th Cir. 1988) (taking judicial notice of the fees

customarily charged by lawyers in Savanna, GA); *SCA Services, Inc. v. Morgan*, 557 F.2d 110,

115 (7th Cir. 1977) (taking judicial notice of reasonable attorney's fees in Illinois). Accordingly,

I conclude that Defendants' have incurred reasonable attorney's fees of at least $500.00 and will

order Plaintiff to pay Defendants their reasonable attorney's fees in that amount.

### B. Pre-Filing Injunction

In addition to their reasonable attorney's fees, Defendants also ask that I grant a pre-filing

injunction against Plaintiff. The standard for issuing a pre-filing injunction is set forth in *Cromer*

*v. Kraft Foods North America, Inc.*, 390 F.3d 812 (4th Cir. 2004):

> Undoubtedly, the All Writs Act grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants . . . .
>
> Such a drastic remedy must be used sparingly, however, consistent with constitutional guarantees of due process of law and access to the courts. . . .
>
> Thus, a judge should not in any way limit a litigant's access to the courts absent "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." Indeed, "use of such measures against a *pro se* plaintiff should be approached with particular caution" and should "remain very much the exception to the general rule of free access to the courts."
>
> In determining whether a prefiling injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.
>
> . . . .
>
> Moreover, even if a judge, after weighing the relevant factors, properly determines that a litigant's abusive conduct merits a prefiling injunction, the judge must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue. Absent this narrowing, a prefiling injunction, like any other injunction, will not survive appellate review.

Case 3:07-cv-00036-NKM-BWC   Document 38   Filed 02/12/08   Page 7 of 10   Pageid#: 261

. . . .

       We also note that before a judge issues a prefiling injunction . . . , even a narrowly tailored one, he must afford a litigant notice and an opportunity to be heard.

*Id.* at 817–19 (citations omitted).

As an initial matter, there can be no question that Plaintiff was afforded notice and an opportunity to be heard. Defendants' Motion for Sanctions makes clear that they seek a prefiling injunction, and they notified Plaintiff of their intention to do so at least 21 days before the motion was filed. Furthermore, Plaintiff received more than two-weeks advance notice of the hearing on the motion. At the hearing, Plaintiff was given the opportunity to oppose Defendants' request for a pre-filing injunction and did so.

Turning, then, to the four *Cromer* factors, I find after carefully weighing the factors that a pre-filing injunction is substantively warranted. The first *Cromer* factor concerns "the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits." *Id.* at 818. Plaintiff's litigation history shows that he has filed or attempted to file thirteen lawsuits against LCPS, the Louisa County School Board, or their employees. Twelve of those lawsuits have been duplicative, and given the multiple dismissals for failure to state a claim and frivolousness, they can surely be said to at some point have become vexatious and harassing.

The second *Cromer* factor asks "whether the party had a good faith basis for pursuing the litigation, or simply intended to harass." *Id.* Certainly, Plaintiff seems sincere in his belief that he was the victim of racial discrimination, and the first time he brought his claims, they had a sufficient basis to proceed at least to the summary judgment stage. Whatever good faith basis Plaintiff had for pursuing his claims in that initial case, however, rapidly diminished with each successive, duplicative lawsuit.[7] Furthermore, to the extent that Plaintiff's claims might fall

---

[7] In an attempt to justify his duplicative filings, Plaintiff frequently blames his attorney at the time for the failure

within the scope of 42 U.S.C. § 1983, the statute of limitations expired at least six years ago. *Couch v. Jabe*, 479 F. Supp. 2d 569, 575–576 (W.D. Va. 2006). Given that the present action represents Plaintiff's twelfth successive, duplicative lawsuit, his supply of good faith has long since been exhausted, and there is no other reasonable explanation for Plaintiff's filing this action other than an intent to harass Defendants.

The third *Cromer* factor considers "the extent of the burden on the courts and other parties resulting from the party's filings." *Cromer*, 390 F.3d at 818. Plaintiff's "personal crusade" has undoubtedly resulted in the expenditure of thousands of dollars in legal fees by his opposition and hundreds of hours in processing and deciding his motions and pleadings by the Court. Furthermore, the burden on the Court's time and resources is borne by the nation's taxpayers and by litigants in other cases who have suffered the delayed adjudication of meritorious claims. Similarly, the burden on Plaintiff's opposition is borne by the citizens of Louisa County and, in particular, the children who rely on LCPS for their education.

The final *Cromer* factor considers "the adequacy of alternative sanctions." *Id.* This raises the question of whether the $500.00 monetary sanction is itself sufficient to deter Plaintiff from bringing future frivolous lawsuits against Defendants and related parties. I find that it is not. Plaintiff has shown a consistent pattern of disregard for this Court's orders and admonitions. Not only has he continued to file frivolous lawsuits despite numerous prior dismissals, he has also, for example, continued to threaten the Court with adverse personal consequences if it does not rule in his favor, despite having twice been warned that doing so will result in sanctions for contempt of court.[8] Moreover, Plaintiff's litigation history shows a tendency to file his lawsuits in spurts, with a year or more between, almost as if Plaintiff's

---

of his first discrimination case. If Plaintiff's attorney was at fault, however, his remedy lies with attorney and not with repeated re-filing of the same lawsuit.

   [8] I will address this issue in greater detail in a separate Notice.

memory of the dismissal of his last round of filings tends to fade over time. This pattern suggests that a monetary sanction might deter Plaintiff for a time, perhaps for even longer than would a simple dismissal of his case, but that eventually he would likely file another frivolous lawsuit against Defendant or related parties.[9] Though none of this bodes particularly well for Plaintiff's compliance with a pre-filing injunction, the injunction will also direct the Clerk not to accept for filing any new civil actions brought in violation of the injunction, thereby sparing Defendants and related parties the expense of having to respond.

In sum, I find that the four *Cromer* factors weigh strongly in favor of granting a narrowly tailored pre-filing injunction. Accordingly, I will enter such an injunction and set forth its specific terms in an Order to follow.

## IV. CONCLUSION

For the foregoing reasons, I will enter Orders GRANTING Defendants' Motion to Dismiss, GRANTING Defendants' Motion for Sanctions, ORDERING Plaintiff to pay Defendants their reasonable attorney's fees in the amount of $500.00, and GRANTING a pre-filing injunction against Plaintiff.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to Plaintiff and all counsel of record.

Entered this 11th day of February, 2008.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[9] Certainly, the repentant attitude that Plaintiff displays when personally appearing before the Court never seems to last. For example, at both of the hearings held in this case, Plaintiff adopted an apologetic tone with regard to his threats toward the Court, and then afterwards reiterated his threats in written motions.

- 10 -